UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KAREN L. BRILMYER, | ) | |
| Plaintiff | ) | C.A. No. 04-40258 FDS |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF CHICAGO | ) | |
| AND THE STANDARD | ) | |
| INSURANCE COMPANY, | ) | |
| Defendants | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants The University of Chicago (the "University") and Standard Insurance Company ("Standard") move pursuant to F.R.C.P. 56 to dismiss plaintiff Karen Brilmyer's claim for a retroactive increase in long term disability ("LTD") benefits paid under an employee welfare benefit plan (the "Plan") sponsored by the University and insured by Standard.

Ms. Brilmyer, a former University employee, since November 2000 has been receiving and continues to receive LTD benefits under "Base" plan coverage. She now claims that she should be receiving additional benefits under a more lucrative "Optional" plan. The Plan, however, explicitly provides that no participant has Optional LTD coverage unless specifically approved by Teacher's Insurance and Annuity Association ("TIAA"), the original insurer and claim administrator of the Plan. Because neither TIAA nor its successor, Standard, approved Ms. Brilmyer for Optional plan coverage, her claim must be dismissed as a matter of law.

In the event that the Court denies this motion in whole or in part, plaintiff's demand for a jury trial must be stricken.

## FACTS

Plaintiff Karen Brilmyer worked as a human resources administrator at the University from 1989 to 2000. Statement of Undisputed Facts ("SUF"), ¶ 1. The University sponsors and maintains an employee welfare benefit plan (the "Plan"), as that term is defined by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq., that provides benefits in the event of LTD. Ms. Brilmyer was at all relevant times a participant in the Plan. Id. Teachers Insurance and Annuity Association ("TIAA") originally issued the group policy that funded LTD benefits under the Plan (the "Policy") and served as the Plan's claims administrator. In October, 2002 TIAA assigned its rights and interests in the group policy to Standard. Id. at ¶ 2.

The Plan offers Base and Optional LTD coverage levels (hereafter "Base LTD" and "Optional LTD"). Base LTD and Optional LTD pay benefits initially at 60% of the monthly wage base. An insurance certificate provides that under Base LTD, Total Disability is defined as:

    (1)    For the Elimination Period . . . and for next 24 months, being completely unable due to sickness, bodily injury, or pregnancy to perform material and substantial duties of your Normal Occupation; and

    (2)    After those 24 months, being unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training or experience.

Optional LTD defines Disability or Disabled as either:

    (1)    being completely unable due to sickness, bodily injury, or pregnancy to perform material and substantial duties of

> your Normal Occupation and not performing any other
> occupation; or
>
> (2)     working, but unable due to sickness, bodily injury or
>         pregnancy to earn more than 80% of your Increasing
>         Monthly Wage Base.

Optional LTD also increases benefits by 5% after the first year benefits are payable and offers a

higher maximum benefit. The Summary Plan Description contains similar provisions. Id. at ¶

3.

The insurance certificate explains how a participant may change from Base LTD

to Optional LTD:

> a Change in Plan will be made when you give your Employer a
> written request for a Plan different than the one for which you are
> insured. The Change in Plan will take effect on the first day of the
> month following the date TIAA approves your proof of good
> health . . . if you are requesting a change from benefits under the
> Base Plan to benefits under the Optional Plan.

The Plan participant must be actively at work on the date the change in Plan is to

take effect. If the participant is not actively at work, the change in Plan will not take effect until

after the insured has completed five full consecutive days of active work. Id. at ¶ 4.

The insurance certificate explicitly states: "you will become insured under the

Optional Plan . . .on . . . the date TIAA approves your proof of good health . . . ." Id. at ¶ 5. A

Plan participant is eligible for coverage under Base LTD or Optional LTD, but not both. Id. at ¶

6.   The Plan charges participants a higher fee for Optional over Base LTD coverage. Id. at ¶ 7.

Ms. Brilmyer was enrolled for Base LTD on October 1, 1989. Id. at ¶ 8. During a

1999 open enrollment period, Ms. Brilmeyer requested an increase from Base LTD to Optional

LTD coverage as well as an increase in life insurance coverage.  As part of her application for

coverage under the Optional Plan, Ms. Brilmyer completed an online health questionnaire. Id. at

¶ 9. TIAA did not approve Ms. Brilmyer's completed application based on the online questionnaire but invited Ms. Brilmyer to submit a written statement of health. She submitted a statement of health form dated November 15, 1999 in which she disclosed having taken Zoloft, a history of post traumatic stress disorder ("PTSD") and a neck injury. Id. at ¶ 10.

TIAA wrote Ms. Brilmyer on February 17, 2000 that it had completed its "initial review of the enrollment material" and that it must "temporarily decline coverage at this time." It said it would reconsider if Ms. Brilmyer submitted a narrative summary from her physicians concerning her medical history, nature of treatment for PTSD and reasons for taking Zoloft. The subject line on the letter states only "group life insurance option 4." Id. at ¶ 11. Ms. Brilmyer was never charged—nor did she ever pay—increased fees associated with Optional LTD coverage. Id. at ¶ 12.

On April 22, 2000 Ms. Brilmyer fell 14-18 feet from a ladder onto a sidewalk. She was diagnosed with closed head trauma, right shoulder pain, and episodic vertigo. Id. at ¶ 13. Ms. Brilmyer did not return to work at the University following her head injury. Id. at ¶ 14.

On July 28, 2000, the University awarded Ms. Brilmyer Short Term Disability ("STD") benefits effective August 4, 2000. Id. at ¶ 15.

On September 16, 2000 Ms. Brilmyer applied for LTD benefits. TIAA awarded Ms. Brilmyer Base LTD benefits commencing November, 2000. Id. at ¶ 16.

In an October 9, 2002 telephone conversation with TIAA representative Diane Hinkle, Ms. Brilmyer asked about her 1999 request for Optional LTD coverage. Ms. Hinkle responded that according to information supplied by the University, Ms. Brilmyer only had Base LTD coverage. Ms. Brilmyer admitted to Ms. Hinkle thinking that TIAA's February 17, 2000 letter [which declined Ms. Brilmyer's request for increased life insurance coverage] may have

applied to LTD as well as life insurance coverage. Ms. Hinkle recommended that Ms. Brilmyer contact the University to see if it had a record of her plan change. Id. at ¶ 17.

Ms. Brilmyer sent an email to Susan Loeb at the University informing her of her 1999 request for Optional LTD coverage. Ms. Brilmyer stated that she had received "no record of this being approved, disapproved or anything." She asked Ms. Loeb for any relevant documentation. Id. at ¶ 18.

Ms. Loeb replied that the University informed Ms. Brilmyer on October 17, 2002 that her request for Optional LTD coverage "was not approved" and that such increases are "not automatic." Ms. Loeb noted that TIAA would use the same health form to evaluate changes in life and LTD coverage and would typically respond to requested changes in life and LTD coverage in the same letter. Ms. Loeb further explained that the February 17, 2000 letter Ms. Brilmyer received temporarily denying her request for increased life insurance benefits applied to her request for Optional LTD coverage. Id. at ¶ 19.

On October 30, 2002, Ms. Brilmyer reported Ms. Hinkle that the University confirmed receiving her request for Optional LTD coverage. Ms. Brilmyer acknowledged that TIAA requested additional medical information on February 17, 2000. She claimed she was unable to respond because of her accident. Ms. Brilmyer claimed that TIAA had enough information to respond to the coverage request and that it should pay Optional LTD benefits. She offered to pay the difference in fees between Optional LTD and Base LTD. Ms. Hinkle said she would research whether TIAA would allow a retroactive increase in benefits. Id. at ¶ 20.

In a November 6, 2002 telephone conversation with Ms. Brilmyer, Ms. Hinkle confirmed that TIAA received her request for Optional LTD coverage on February 10, 2000. She told Ms. Brilmyer that TIAA never received a response to its February 17, 2000 letter

requesting more information. She also told Ms. Brilmyer that she could request a review of TIAA's coverage decision. Id. at ¶ 21.

In a January 22, 2003 letter to Diane Hinkle, Ms. Brilmyer contested TIAA's denial of her request for Optional LTD coverage on the ground that she never received notice that her application was denied. She said that she had she assumed that she was covered under Optional LTD. She offered to pay the difference in plan fees retroactively to January 2000. Id. at ¶ 22.

TIAA on March 3, 2003 confirmed receipt of Ms. Brilmyer's request for reconsideration. It informed her that Standard "acquired TIAA's group disability insurance business and currently serves as claims administrator . . ." TIAA forwarded her request to Standard. Id. at ¶ 23. Thereafter Standard's Quality Assurance Unit reviewed the TIAA coverage decision. Id. at ¶ 24.

By letter dated April 25, 2003 Standard informed Ms. Brilmyer that it was upholding TIAA's decision to decline Ms. Brilmyer's request for Optional LTD coverage. That letter stated, in part:

> The group policy stipulates that coverage under the Optional plan will not be effective until it is approved by TIAA. In this regard you were not notified that your enrollment material had been approved, nor were you notified by the University or TIAA that premiums would be deducted for the Optional plan coverage. Although TIAA determined that based on the responses to the Employee Statement of Health Form you completed that you were not eligible for increased coverage under the group policy, this statement of health was reviewed by Standard's Medical Underwriting Department. Based on your response to the questions on the form, it was determined that the declination for Optional coverage was correct based on your admitted medical history of post traumatic stress disorder and a neck injury. This declination is consistent with medical underwriting guidelines in the industry, per the Standard's Medical Underwriting Department.

6

Id. at ¶ 25.

On October 9, 2003 Ms. Brilmyer's attorney asked Standard for further review of Ms. Brilmyer's claim. Standard replied on October 17, 2003 that no further administrative review was available. Id. at ¶ 26.

In a November 13, 2003 letter Ms. Brilmyer's attorney claimed that the denial of Ms. Brilmyer's application was based "at least, in part on, her becoming disabled shortly after making the application to change plans." He requested "evidence of the denial of Ms. Brilmyer's application taking place prior to Ms. Brilmyer's disability." He also requested "documents or other items which were the basis of the denial of Ms. Brilmyer's application." Id. at ¶ 27.

On January 12, 2004 Standard advised Ms. Brilmyer's attorney that "in an effort to address Ms. Brilmyer's concerns, Standard's Medical Underwriting Department is willing to permit a retroactive consideration of the initial underwriting decision to decline the additional coverages." Id. at ¶ 28. Ms. Brilmyer's attorney on March 11, 2004 submitted a list of those providing medical treatment to Ms. Brilmyer from January 1, 1993 to December 31, 1999. Thereafter, Standard collected medical records from Ms. Brilmyer's various providers and submitted them to its Medical Underwriting Operations Department. Id. at ¶ 29.

By letter dated August 19, 2004 Standard's Medical Underwriting Operations Department denied Ms. Brilmyer's request for retroactive Optional LTD coverage. It concluded that Ms. Brilmyer's documented medical conditions from January 1993 to December 31, 1999 would not have permitted increases in Life and LTD coverages. These medical conditions included fibrocystic breast disease, on-going depression, occasional tremors of unknown etiology and disc herniation at C5/6 with neck and shoulder pain and tingling. According to Cathy Bean, a

Standard Senior Medical Underwriter, this conclusion is consistent with medical underwriting guidelines in the industry.  Id. at ¶ 30.

On December 14, 2004, Ms. Brilmyer commenced this action against Standard, in which she asserts a single count under ERISA, 29 U.S.C. § 1132(a)(1)(B), Optional LTD benefits.  Id. at ¶ 31

Standard continues to pay Ms. Brilmyer Base LTD benefits.  Id. at ¶ 32.

## ARGUMENT

### I.  Standard of Review

The Supreme Court has held that a denial of ERISA-regulated benefits "is to be reviewed under a de novo standard of review *unless* the benefit plan gives the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the Plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

Ms. Brilmyer claims under 29 U.S.C. § 1132(a)(1)(B) for Optional LTD benefits, not Base LTD benefits she has been paid.  In essence, she contests the amount of benefits to which she is entitled.  If Ms. Brilmyer were receiving benefits under the Optional Plan, she would be entitled to a 5% increase in her monthly benefits each and every year following the first 12 months of LTD benefits.[1]  Id. at ¶ 3.

The Policy explicitly vests TIAA with discretionary authority to determine eligibility for benefits.  The insurance certificate provides that "Written proof of Total Disability or Disability is required at reasonable intervals to be determined by TIAA. All proof must be satisfactory to TIAA."  Loeb Aff., Exhibit B p. 28.  The First Circuit has found this language sufficient to warrant deferential review under Firestone.  See Brigham v. Sun Life of Canada,

---

[1] Optional LTD also utilizes a more expansive definition of disability.  Because Ms. Brilmyer continues to receive LTD benefits even under the more limited Base LTD standard, the applicable definition of disability is not presently an issue.

317 F.3d 72, 81 (1st Cir. 2003); see also Metropolitan Life Ins. Co. v. Socia, 16 F. Supp. 2d 66, 69 (D.Mass. 1998); Guarino v. Metropolitan Life Ins. Co., 915 F. Supp. 435, 443-44 (D.Mass. 1995).

The Court should therefore apply a deferential arbitrary and capricious standard of review to Standard's (as TIAA's successor) decisions 1) to affirm TIAA's denial of Ms. Brilmyer's claim for Optional LTD benefits and 2) itself to deny that claim after retroactive consideration of her application for coverage. Reasoned denials of benefits that are supported by substantial evidence will survive review under this standard. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). Substantial evidence exists where the evidence is reasonably sufficient to support the decision. Doyle, 144 F.3d at 184. To be overturned, a decision must be "not just incorrect but downright unreasonable." Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir. 1999).

## II.    The Evidence is Limited to the Administrative Record

In an ERISA claim for benefits, the evidence is limited to the administrative record, i.e. those documents before the administrator at the time of its decision. Orndorff v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). The administrative record pertaining to Ms. Brilmyer's claim is voluminous. Most records concern Ms. Brilmyer's medical condition, which is not at issue in this case. Defendants have appended to the Affidavit of H. Kay Derochie only those non-privileged documents which pertain to Ms. Brilmyer's request for Optional LTD coverage. If the Court wishes to examine the entire administrative record, defendants will provide the same with the exception of privileged records, for which a log will be provided.

### III.    Standard's Decision To Deny Optional LTD Coverage
### Was Correct

Standard's decision to affirm TIAA's denial of Optional LTD coverage was
neither arbitrary nor capricious.  The insurance certificate unambiguously states that a
participant's change from Base LTD coverage to Optional LTD coverage does not take effect
until TIAA *approves* the application based on his or her proof of good health.  SUF, ¶ 4.  TIAA
never deemed Ms. Brilmyer's health statement acceptable and never approved her request for
Optional LTD coverage.  Ms. Brilmyer even admitted she received "no record of [her
application] being approved, disapproved or anything." Id. at ¶ 18.  To award Optional LTD
coverage now would contravene the plain terms of the Plan.

According to the University, TIAA's February 17, 2000 letter temporarily
denying Ms. Brilmyer's request for increased life insurance coverage also applied to her request
for Optional LTD coverage. Id. at ¶ 19.  Ms. Brilmyer even admitted thinking that TIAA's
February 17, 2000 letter may have applied to LTD benefits. Id. at ¶ 17.  Ms. Brilmyer was never
charged—nor did she ever pay—fees for Optional LTD coverage. Id. at ¶ 19.  Yet, she now
contends that "to her knowledge" she was covered under the Optional LTD all along.
Complaint, ¶ 27.  The administrative record does not, however, support her contention.  Ms.
Brilmyer was never approved for or covered under Optional LTD.

Oddly, Ms. Brilmyer waited until October 9, 2002 to ask whether she had ever
been approved for Optional LTD coverage—more than two years after she applied for that
coverage.  She acknowledges that she was awarded LTD benefits under the Base Plan in
November 2000.  Complaint, ¶ 25.  She was receiving Base LTD benefits for more than two
years before it occurred to her to ask about Optional LTD coverage.  SUF, ¶ 16.  At the very
least, TIAA's failure to pay Ms. Brilmyer increased benefits in November 2001, one year after

10

she began receiving LTD benefits, put her on notice—to the extent that she did not already know—that she was not covered under Optional LTD.

Standard's decision to deny Optional LTD coverage after its own retroactive consideration of Ms. Brilmyer's application was also entirely reasonable. Ms. Brilmyer was suffering from a number of serious medical conditions when she applied for Optional LTD, including fibrocystic breast disease, on-going depression, occasional tremors of unknown etiology, and disc herniation at C5/6 with neck and shoulder pain and tingling. Id. at ¶ 30. These conditions, in Standard's view, would have precluded her from being approved for increases in both life and LTD coverages. Id. According to Cathy Bean, a Standard Senior Medical Underwriter, this opinion is consistent with medical underwriting guidelines in the industry. Id. Ms. Brilmyer never offered any evidence to suggest that Standard's underwriting decision was unreasonable or inconsistent with industry standards.

Even under the scrutiny of de novo review, Standard's and TIAA's decisions stand correct. Ms. Brilmyer can point to no evidence in the administrative record suggesting that she was ever approved, or should have been approved, for Optional LTD coverage.

## IV. Standard Is Not Estopped From Denying Optional LTD Coverage

Ms. Brilmyer may argue that Standard should be estopped now from denying Optional LTD because TIAA's February 17, 2000 denial of her application referenced life insurance coverage only. First, is not at all clear in the First Circuit if common law estoppel survives ERISA preemption. See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir. 2001)(noting that it is still an open question in the First Circuit whether an equitable estoppel claim is permitted under ERISA); Law v. Ernst & Young, 956 F.2d 364, 370 n. 9 (1st Cir. 1992) (declining to decide whether First Circuit would recognize an estoppel in

certain limited circumstances); Caradonna v. Compaq Computer Corp., 2000 WL 1507454 *6 (D.N.H. 2000) (noting that the First Circuit has not decided whether a beneficiary may maintain an equitable estoppel claim under ERISA).

A majority of other circuits agree that ERISA preempts estoppel claims. See e.g., McNeil v. Time Ins. Co., 205 F.3d 179, 191 (5th Cir. 2000); White v. Provident Life & Acc. Ins. Co., 114 F.3d 26, 29 (4th Cir.1997); Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir.1992); Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1050 (10th Cir.1992); National Cos. Health Ben. Plan v. St. Joseph's Hosp., 929 F.2d 1558, 1571-72 (11th Cir.1991); Davis By and Through Farmers Bank and Capital Trust Co. of Frankfort, Kentucky v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 696 (6th Cir. 1989). They find that estoppel claims pose a risk of creating conflicting employer obligations and variable standards of recovery, thereby undermining the purpose of ERISA's broad preemption clause. White, 114 F.3d at 29; Peckham, 964 F.2d at 1050; Davis, 887 F.2d at 696.

To the extent that estoppel claims may result in informal written or oral plan amendments, they can make it difficult for employees to rely on their plans because benefits could be radically affected by informal agreements. National Cos. Health Ben. Plan, 929 F.2d at 1571-72. Preemption of estoppel claims safeguards ERISA's underlying policy of protecting the interests of employees and their beneficiaries in employee benefit plans. Id.

Second, even if an estoppel claim could survive preemption in this case, Ms. Brilmyer cannot prevail. An estoppel claim at its core contains two elements 1) a definite misrepresentation of fact and 2) reasonable reliance on that misrepresentation to one's detriment. Mauser, 239 F.3d at 57. TIAA's only communication to Ms. Brilmyer about her application for coverage was that her request was "temporarily declined." Even that letter referenced only life

insurance coverage. When Ms. Brilmyer inquired about coverage in 2002, both TIAA and the University informed her that she had never been approved for Optional LTD. There is no evidence that Standard, the University or TIAA ever misrepresented that Ms. Brilmyer in fact had Optional LTD coverage. They all consistently stated that she was never approved. Ms. Brilmyer cannot construct an estoppel claim based on TIAA's silence, or denial of the application for increased life coverage, in response to her application for Optional LTD coverage, particularly when the Plan requires an affirmative approval of an application for Optional LTD coverage.

### V.    The University Is Not A Proper Party

While the University is Plan sponsor and administrator (see SUF, ¶1; Loeb Affidavit, Exhibit A, p. 21) it had no substantive involvement with the decision to deny Optional LTD coverage to Ms. Brilmyer. TIAA and its successor, Standard, as claim administrator, made the coverage determination exclusively. The proper party defendant to a §1132(a)(1)(B) claim is the entity that controlled the administration of that claim. See DiGregorio v. Pricewaterhouse Coopers Long Term Disability Plan, 2004 WL 1774566, *15-16 (D. Mass. Aug. 9, 2004). Standard remains the proper party defendant because it rendered the coverage decision now at issue. Even if that decision were incorrect, summary judgment should enter in favor of the University because it is not a proper party.

### VI.    Summary Judgment Should Enter Dismissing Plaintiff's Complaint

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997).

The material facts here cannot be disputed. No evidence beyond the administrative record may now be presented. The Plan requires that a participant must be explicitly approved before he or she has Optional LTD coverage. The administrative record demonstrates that Ms. Brilmyer was never approved for Optional LTD coverage. For these reasons summary judgment should now enter dismissing Ms. Brilmyer's claim.

## VII.    Plaintiff Is Not Entitled To A Jury Trial

In the event that the Court should deny this motion in whole or in part, then the jury demand in Ms. Brilmyer's complaint must be stricken. Because ERISA provides the sole avenue for relief to plaintiff, she has no right to a jury trial. A majority of circuit courts have concluded that a jury trial is not available for benefit claims under ERISA because proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury. <u>See, e.g.</u>, <u>Recupero v. New England Tel. & Tel. Co.</u>, 118 F.3d 820, 831-32 (1st Cir. 1997); <u>Sullivan v. LTV Aerospace & Def. Co.</u>, 82 F.3d 1251, 1258 (2d. Cir.1996); <u>Sullivan v. LTV Aerospace & Def. Co.</u>, 82 F.3d 1251 (2nd Cir. 1996); <u>Borst v. Chevron Corp.</u>, 36 F.3d 1308, 1323-24 (5th Cir.1994) ; <u>Spinelli v. Gaughan</u>, 12 F.3d 853 (9th Cir. 1993); <u>Biggers v. Wittek Industries, Inc.</u>, 4 F.3d 291 (4th Cir. 1993); <u>Cox v. Keystone Carbon Co.</u>, 894 F.2d 647, 649-50 (3d Cir.1990); <u>Blake v. Unionmutual Stock Life Ins. Co.</u>, 906 F.2d 1525 (11th Cir. 1990); <u>Cox v. Keystone Carbon Co.</u>, 894 F.2d 647 (3rd Cir.), <u>cert</u>. <u>denied</u>, 498 U.S. 811 (1990); <u>Daniel v. Eaton Corp.</u>, 839 F.2d 263 (6th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 826 (1988); <u>In Re Vorpahl</u>, 695 F.2d 318 (8th Cir. 1982).

Accordingly, District Courts in this Circuit have held routinely that jury trials are not available in ERISA cases: <u>Dudley Supermarket v. TransAmerica Life Ins. & Ann. Co.</u>, 188 F. Supp 2d 23, 24 (D. Mass 2002); <u>Canis v. Coca-Cola Enterprises, Inc.</u>, 49 F. Supp. 2d 73, 80 n.3 (D.R.I. 1999); <u>Gentile v. John Hancock Mut. Life Ins. Co.</u>, 951 F.Supp. 284 (D.Mass.1997); <u>Charlton Memorial Hosp. v. Foxboro Co.</u>, 818 F. Supp. 456, (D. Mass. 1993); <u>Kelly v. Blue Cross & Blue Shield of Rhode Island</u>, 814 F. Supp. 220, 222 (D.R.I. 1993). Ms. Brilmyer is therefore not entitled to a jury trial.

## CONCLUSION

For the foregoing reasons, defendants request that the Court enter judgment dismissing all of the claims asserted by plaintiff Karen Brilmyer. In the event that this motion is denied in whole or in part, then plaintiff's jury demand should be stricken.

Brooks R. Magratten, Esq. BBO# 650393
Catherine A. Syner, Esq. BBO # 657982
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated:  July  *8*  , 2005

## CERTIFICATE OF SERVICE

TO:

Peter C. Lacy, Esq.
121 Broad Street
Jefferson, MA 01522

I hereby certify I caused to be served on the above-named counsel of record a copy of the within memorandum in support of defendant's motion for summary judgment by first class mail, postage prepaid, on July _____8_____, 2005.