UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN L. BRILMYER, )<br>      Plaintiff    )<br>)<br>v.                  )<br>)<br>UNIVERSITY OF CHICAGO  )<br>AND THE STANDARD      )<br>INSURANCE COMPANY,   )<br>      Defendants   ) | C.A. No. 04-40258 FDS |

## DEENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1 and in further support of their Motion for Summary Judgment, defendants the University of Chicago (the "University") and Standard Insurance Company ("Standard") submit the following Statement of Undisputed Facts:

1. Plaintiff Karen Brilmyer worked as a human resources administrator at the University from 1989 to 2000. Affidavit of H. Kay Derochie, ("Derochie Aff."), ¶ 6. The University sponsors and maintains an employee welfare benefit plan (the "Plan"), as that term is defined by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq., that provides benefits in the event of long-term disability ("LTD"). Affidavit of Susan Loeb, ("Loeb Aff."), ¶ 2. Ms. Brilmyer was at all relevant times a participant in the Plan. Derochie Aff, ¶ 2.

2. Teachers Insurance and Annuity Association ("TIAA") originally issued a group policy funding LTD benefits under the Plan (the "Policy") and served as the Plan's claims administrator. Loeb Aff., ¶ 3. In October, 2002 TIAA assigned its rights and interests in the group policy and Plan to Standard. Id.

3.  The Plan offers Base and Optional LTD coverage levels (hereafter "Base LTD" and "Optional LTD"). Base LTD and Optional LTD pay benefits initially at 60% of the monthly wage base. Loeb Aff, ¶ 4, Exhibit A, p. 144; Exhibit B p. 49. The insurance certificate provides that under Base LTD, Total Disability is defined as:

> (1)  For the Elimination Period . . . and for next 24 months, being completely unable due to sickness, bodily injury, or pregnancy to perform material and substantial duties of your Normal Occupation; and
>
> (2)  After those 24 months, being unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training or experience.

Optional LTD defines Disability or Disabled as either:

> (1)  being completely unable due to sickness, bodily injury, or pregnancy to perform material and substantial duties of your Normal Occupation and not performing any other occupation; or
>
> (2)  working, but unable due to sickness, bodily injury or pregnancy to earn more than 80% of your Increasing Monthly Wage Base.

Optional LTD also increases benefits by 5% after the first year benefits are payable and offers a higher maximum benefit. Id. at ¶ 4, Exhibit B, p. 25, 49. The Summary Plan Description contains similar provisions. Id. at ¶ 4, Exhibit A, p. 144-45.

4.  The insurance certificate provides that:

> a Change in Plan will be made when you give your Employer a written request for a Plan different than the one for which you are insured. The Change in Plan will take effect on the first day of the month following the date TIAA approves your proof of good health . . . if you are requesting a change from benefits under the Base Plan to benefits under the Optional Plan.

The insured must be actively at work on the date the change in Plan is to take effect. If the insured is not actively at work, the change in Plan will not take effect until after the insured has completed five full consecutive days of active work. Id. at ¶ 5, Exhibit B, p. 52.

5. The insurance certificate states explicitly that: "you will become insured under the Optional Plan . . .on . . . the date TIAA approves your proof of good health . . .." Id. at ¶ 6, Exhibit B p. 45.

6. A Plan participant is eligible for coverage under Base LTD or Optional LTD, but not both. Id. at ¶ 7.

7. The Plan charges participants a higher fee for Optional over Base LTD coverage. Id. at ¶ 8.

8. Ms. Brilmyer was enrolled for Base LTD coverage on October 1, 1989. Derochie Aff., ¶ 7.

9. During a 1999 open enrollment period, Ms. Brilmeyer requested an increase from Base LTD to Optional LTD coverage as well as an increase in life insurance coverage. Id. at ¶ 8. As part of her application for Optional LTD coverage, Ms. Brilmyer completed an online health questionnaire. Id.

10. TIAA did not approve Ms. Brilmyer's application based on the online questionnaire but invited Ms. Brilmyer to submit a written statement of health form. She submitted a statement of health form dated November 15, 1999 in which she disclosed having taken Zoloft, a history of post traumatic stress disorder ("PTSD") and a neck injury. Id. at ¶ 9, Exhibit A, p. 773.

11. TIAA wrote Ms. Brilmyer on February 17, 2000 that it had completed its "initial review of the enrollment material" and that it must "temporarily decline coverage at this

time." TIAA said it would reconsider if Ms. Brilmyer submitted a narrative summary from her physicians of her medical history, nature of treatment for PTSD and reasons for taking Zoloft. The subject line on the letter states only: "group life insurance option 4." Id. at ¶ 10, Exhibit A, p. 775.

12. Ms. Brilmyer was never charged—nor did she ever pay—the increased fees associated with Optional LTD coverage. Id. at ¶ 11.

13. On April 22, 2000 Ms. Brilmyer fell 14-18 feet from a ladder onto a sidewalk. Id. at ¶ 12, Exhibit A, p. 223. She was diagnosed with closed head trauma, right shoulder pain, and episodic vertigo. Id. at ¶ 12, Exhibit A, p. 225.

14. Ms. Brilmyer did not return to work at the University following her head injury. Id. at ¶ 13, Exhibit A, pp. 518-22.

15. On July 28, 2000 the University awarded Ms. Brilmyer Short Term Disability ("STD") benefits effective August 4, 2000. Loeb Aff., ¶ 9.

16. On September 16, 2000 Ms. Brilmyer applied for LTD benefits. Derochie Aff., ¶ 14, Exhibit A, pp. 518-22. TIAA awarded Ms. Brilmyer Base LTD benefits commencing November, 2000. Id. at ¶ 14, Exhibit A, p. 514.

17. In an October 9, 2002 telephone conversation with TIAA representative Diane Hinkle, Ms. Brilmyer asked about her 1999 request for Optional LTD coverage. Ms. Hinkle responded that according to information supplied by the University, Ms. Brilmyer was enrolled only for Base LTD coverage. Ms. Brilmyer admitted to Ms. Hinkle thinking that TIAA's February 17, 2000 letter [which declined Ms. Brilmyer's request for increased life insurance coverage] may have applied to LTD as well as life insurance coverage. Ms. Hinkle

recommended that Ms. Brilmyer contact the University to see if it had a record of a plan change. Id. at ¶ 15, Exhibit A p. 590.

18.   Ms. Brilmyer sent an email to Susan Loeb at the University informing her of her 1999 request for Optional LTD coverage. Ms. Brilmyer stated that she had received "no record of this being approved, disapproved or anything." She asked Ms. Loeb for any relevant documentation. Id. at ¶ 16, Exhibit A, pp. 629-31.

19.   Ms. Loeb replied on October 17, 2002 that the University informed Ms. Brilmyer that her request for Optional LTD coverage was not approved and that such increases are "not automatic." Id. at ¶ 16, Exhibit A, p. 630. Ms. Loeb noted that TIAA would use the same health form to evaluate changes in life and LTD coverage and would typically respond to requested changes in life and LTD coverage in the same letter. Ms. Loeb further explained that the February 17, 2000 letter Ms. Brilmyer received temporarily denying her request for increased life insurance benefits applied as well to her request for Optional LTD coverage. Id. at ¶ 16, Exhibit A, p. 631.

20.   On October 30, 2002 Ms. Brilmyer reported Ms. Hinkle that the University confirmed receiving her request for Optional LTD coverage. Ms. Brilmyer acknowledged that TIAA requested additional medical information on February 17, 2000. She claimed she was unable to respond because of her accident. Ms. Brilmyer claimed that TIAA had enough information to respond to that request and that it should pay Optional LTD benefits. She offered to pay the difference in fees between Optional LTD and Base LTD coverage. Ms. Hinkle said that she would research whether TIAA would allow a retroactive increase in benefits. Id. at ¶ 18, Exhibit A, p. 601.

21. In a November 6, 2002 telephone conversation with Ms. Brilmyer, Ms. Hinkle confirmed that TIAA received her request for Optional LTD coverage on February 10, 2000. She told Ms. Brilmyer that TIAA never received a response to its February 17, 2000 letter requesting more information. She also told Ms. Brilmyer that she could request a review of TIAA's coverage decision. Id. at ¶ 19, Exhibit A, p. 603.

22. In a January 22, 2003 letter to Diane Hinkle, Ms. Brilmyer challenged TIAA's denial of her request for Optional LTD coverage on the ground that she never received notice that her application was denied. She claimed that when she was injured, she assumed that she was covered under Optional LTD. She offered to pay "the difference in premiums retroactively to January 2000." Id. at ¶ 20, Exhibit A, p. 644.

23. TIAA on March 3, 2003 confirmed receipt of Ms. Brilmyer's request for reconsideration. It informed her that Standard "acquired TIAA's group disability insurance business and currently serves as claims administrator . . ." TIAA forwarded her request to Standard. Id. at ¶ 21, Exhibit A, p. 644.

24. Thereafter Standard's Quality Assurance Unit reviewed TIAA's coverage decision. Id. at ¶ 22, Exhibit A, p. 659.

25. By letter dated April 25, 2003 Standard informed Ms. Brilmyer that it was upholding TIAA's decision to decline Optional LTD coverage. That letter stated, in part:

> The group policy stipulates that coverage under the Optional plan will not be effective until it is approved by TIAA. In this regard you were not notified that your enrollment material had been approved, nor were you notified by the University or TIAA that premiums would be deducted for the Optional plan coverage. Although TIAA determined that based on the responses to the Employee Statement of Health Form you completed that you were not eligible for increased coverage under the group policy, this statement of health was reviewed by Standard's Medical

>Underwriting Department. Based on your response to the questions on the form, it was determined that the declination for Optional coverage was correct based on your admitted medical history of post traumatic stress disorder and a neck injury. This declination is consistent with medical underwriting guidelines in the industry, per the Standard's Medical Underwriting Department.

Id. at ¶ 23, Exhibit A, pp. 844-46.

26. On October 9, 2003 Ms. Brilmyer's attorney asked Standard for further review of Ms. Brilmyer's claim. Standard replied on October 17, 2003 that no further administrative review was available. Id. at ¶ 24, Exhibit A, pp. 702-704.

27. In a November 13, 2003 letter Ms. Brilmyer's attorney claimed that the denial of Ms. Brilmyer's application was based "at least, in part on, her becoming disabled shortly after making the application to change plans." He requested "evidence of the denial of Ms. Brilmyer's application taking place prior to Ms. Brilmyer's disability." He also requested "documents or other items which were the basis of the denial of Ms. Brilmyer's application Id. at ¶ 25, Exhibit A, pp. 763-64.

28. On January 12, 2004 Standard advised Ms. Brilmyer's attorney that "in an effort to address Ms. Brilmyer's concerns, Standard's Medical Underwriting Department is willing to permit a retroactive consideration of the initial underwriting decision to decline the additional coverages." Id. at ¶ 26, Exhibit A, p. 777.

29. Ms. Brilmyer's attorney on March 11, 2004 submitted a list of those who provided medical treatment to Ms. Brilmyer from January 1, 1993 to December 31, 1999. Id. at ¶ 27, Exhibit A, pp. 778-84. Thereafter Standard collected medical records from Ms. Brilmyer's various providers and submitted them to its Medical Underwriting Operations Department. Id. at ¶ 27, Exhibit A, pp. 789, 828-29.

7

30. By letter dated August 19, 2004 Standard's Medical Underwriting Operations Department denied Ms. Brilmyer's request for Optional LTD coverage. It concluded that Ms. Brilmyer's documented medical conditions from January 1993 to December 31, 1999 would not have permitted increases in Life and LTD coverages. These medical conditions included fibrocystic breast disease, on-going depression, occasional tremors of unknown etiology and disc herniation at C5/6 with neck and shoulder pain and tingling. According to Cathy Bean, a Standard Senior Medical Underwriter, this conclusion is consistent with medical underwriting guidelines in the industry. Id. at ¶ 28, Exhibit A, pp. 838, 849.

31. On December 14, 2004 Ms. Brilmyer commenced this action against Standard, in which she asserts a single count under ERISA, 29 U.S.C. § 1132(a)(1)(B), for Optional LTD benefits. Complaint, Count I.

32. Standard continues to pay Ms. Brilmyer Base LTD benefits. Derochie Aff., ¶ 30.

Brooks R. Magratten, Esq. BBO# 650393
Catherine A. Syner, Esq. BBO # 657982
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: July 8, 2005

## CERTIFICATE OF SERVICE

TO:

Peter C. Lacy, Esq.
121 Broad Street
Jefferson, MA 01522

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Statement of Undisputed Facts by first class mail, postage prepaid, on July __8__, 2005.

_____