UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| KAREN L. BRILMYER<br>          Plaintiff<br><br>v.<br><br>UNIVERSITY OF CHICAGO and<br>THE STANDARD INSURANCE COMPANY<br>          Defendants | CIVIL ACTION<br><br>Docket Number 04-40258 FDS |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Karen L. Brilmyer ("Brilmyer") opposes Defendants' Motion for Summary Judgment. Plaintiff maintains that this action is not appropriately subject to summary judgment, as there are genuine issues of material fact in dispute, and neither the University of Chicago ("University") nor The Standard Insurance Company ("Standard") is entitled to judgment as a matter of law.

### FACTS

Brilmyer is a former employee of the University of Chicago ("University"). Brilmyer Affidavit ("Bril. Aff.") ¶2. Brilmyer was employed by the University as a full-time regular employee. Bril. Aff. ¶3. Brilmyer's employment status entitled her to be enrolled in a long-term disability plan (the "Plan") as part of the benefits package at the University. Bril. Aff. ¶4. Exhibit A, p. 4.

There are two levels of disability benefits under the Plan, one known as the Base LTD, and the other known as the Optional LTD. Bril. Aff. ¶5. Exhibit A. p. 4. Brilmyer was initially enrolled in the Base LTD. Bril. Aff. ¶6.

Benefits under the Base LTD are described as follows:

> If you are disabled, you will receive 60% of your monthly wage base, less the sum of the benefits you receive from other sources, up to a maximum of $10,000 per month. If you die after having been totally disabled for at least six months, your surviving dependents will receive an income. Bril. Aff. ¶7, Exhibit A, p. 5.

Benefits under the Optional LTD are described as follows:

> The Optional Plan provides four types of benefits over and above those provided by the Base Plan. First, your 60% disability benefit will increase by 5% each year while you are disabled. Second, you may qualify for benefits if you are partially disabled. Third, the Optional Plan employs a more liberal definition of disability. And fourth, the monthly maximum benefit under the Optional Plan is $20,000. Bril. Aff. ¶8, Exhibit A, p. 5.

The definition of "disability" under the Optional LTD is "own occupation", meaning that disability benefits are based on the recipients ability to perform the duties specific to the position held when the person became disabled. The definition of "disability" under the Base LTD is "any occupation", meaning that disability benefits are based on the recipients ability to perform the duties of any job. Bril. Aff. ¶9, Exhibit A, p. 11.

Brilmyer made an application for the Optional LTD for the enhanced benefits. Bril. Aff. ¶10. At the time Brilmyer enrolled in the Plan, the University was the plan administrator of the Plan. Bril. Aff. ¶11, Exhibit A, p. 22. At the time Brilmyer enrolled in the Plan, TIAA was processing applications for benefits made under the Plan. Bril. Aff. ¶12, Exhibit A, p. 15.

During an open enrollment period, which occurred on or about November, 1999, Brilmyer filed an application along with an Employee's Statement of Health to change her level

of benefits from the Base LTD to the Optional LTD. Bril. Aff. ¶13, Exhibit A, p.22. At the same time Brilmyer applied to change the benefit level under the Plan, she also applied to increase the amount of a term life insurance policy which was purchased by her as another part of the employee welfare benefit plan offered by the University of Chicago to its employees. Bril. Aff. ¶14.

On or about February 17, 2000 Brilmyer received a letter from TIAA with a header reading that the letter was regarding "The University of Chicago *Group Life Insurance* Option 4 Group No. 0052" (emphasis added) temporarily declining "coverage" at that time. Bril. Aff. ¶15, Exhibit A, p. 23. I later came to know that the University had also received a letter from TIAA, again mentioning only that my application for group life insurance was temporarily declined, not declining my application for coverage under the Optional LTD. Bril. Aff. ¶16, Exhibit A, p. 24. The letter of February 17, 2000 did not include any information on the change of the level of benefits under the Plan. The denial was only temporary, according to the letter of February 17, 2000. Bril. Aff. ¶17.

On or about April 22, 2000 Brilmyer fell from a ladder and sustained a closed head injury. Bril. Aff. ¶18. She was placed on short-term disability beginning on August 4, 2000. Bril. Aff. ¶19. Brilmyer had also applied for an FMLA Leave of Absence on or about July 21, 2000. Bril. Aff. ¶19, Exhibit A, p. 25. Brilmyer's short-term disability benefits were exhausted on October 20, 2000, reflecting a thirteen week annual allotment of short term disability benefits. Bril. Aff. ¶20, Exhibit A, p. 9.

Brilmyer was approved for benefits under the Base LTD on or about November 27, 2000. Bril. Aff. ¶21, Exhibit A, p. 26. Brilmyer never received any notice that her application for enrollment in the Optional LTD was denied. Bril. Aff. ¶22.

Brilmyer contacted TIAA on or about January 22, 2003 asking TIAA to place her on the Optional LTD, as she had applied for, and to her knowledge under which she was covered. Bril. Aff. ¶23, Exhibit A, p. 30. Brilmyer received a letter dated January 28, 2003 from TIAA stating that her benefits under the Optional LTD were not denied. Bril. Aff. ¶24, Exhibit A, p. 31. Brolmyer's understanding from the letter of January 28, 2003 was that her not receiving benefits under the Optional LTD was an error, not a declination of coverage. Bril. Aff. ¶26.

From the letter of January 28, 2003, Brilmyer understood that she needed to send a letter and supporting documents to the Group Administration area of TIAA to appeal the decision of TIAA that her application was not received. Bril. Aff. ¶27.

On or about February 21, 2003, Brilmyer attempted to contact the Group Administration area, to send that area supporting documents demonstrating that she had complied with the filing requirements of the application, and that the declination of coverage was an error. Bril. Aff. ¶28.

On or about March 3, 2003 Brilmyer received notice that TIAA would no longer be claims administrator for the Plan, but rather that the Standard Insurance Company ("Standard") would now be claims administrator for the Plan, that Standard was now responsible for evaluating claims and making determinations, and that all correspondence regarding the Plan would now be handled by Standard. Bril. Aff. ¶29, Exhibit A, p. 32.

On March 5, 2003 Brolmyer received notice from Standard that her file had been referred to Standard's Quality Assurance Unit for review. Bril. Aff. ¶30, Exhibit A, p. 33. After review, Brolmyer received notice on April 25, 2003 from TIAA that coverage under the Optional LTD had been denied on February 17, 2000, although Brilmyer had not been given any notice of the declination until the date of the letter of April 25, 2003. Bril. Aff. ¶31, Exhibit A, p. 34. Brilmyer

was granted a further review of her case. Bril. Aff. ¶32, Exhibit A, p. 38. After review, Standard again declined me coverage. Bril. Aff. ¶10. Bril. Aff. ¶33, Exhibit A, p. 40.

## ARGUMENT

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The Court cannot grant a motion for summary judgment if genuine issues of material fact exist. Any fact that could affect the outcome of the suit is material. Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of Am., 728 F.Supp. 862, 866 (D.R.I.), *aff'd*, 916 F.2d 731 (1st Cir.1990). The moving party shall not prevail unless the parties do not dispute any facts that could affect the outcome of the litigation. The court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995). If the evidence presented "is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." King v. Sullivan, 776 F.Supp. 645, 649 (D.R.I.1991). Genuine issues of material fact exist in this matter, and therefore summary judgment is not proper.

### II. Standard of Review

Defendants, in their joint memorandum in support of the motion for summary judgment, contend that the standard of review in this matter is an arbitrary and capricious standard. This

5

standard is not one required by the Employee Retirement Income Security Act ("ERISA"), but rather one developed by the Courts. "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations. To fill this gap, federal courts have adopted the arbitrary and capricious standard developed under 61 Stat. 157, 29 U.S.C. § 186(c), a provision of the Labor Management Relations Act, 1947 (LMRA)." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953, U.S.Pa.,1989. Because of differences in the statutory scheme between LMRA and ERISA, the "wholesale importation of the arbitrary and capricious standard into ERISA is unwarranted" Id. "LMRA does not provide for judicial review of decisions of trustees of LMRA plans, while ERISA does. Therefore, the *raison d'être* for the LMRA arbitrary and capricious standard--the need for a jurisdictional basis in suits against trustees--is not present in ERISA." Firestone, 489 U.S. at 110. "Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim by looking to the terms of the plan and other manifestations of the parties' intent", that is, the court would apply a *de novo* review, rather than being bound by the arbitrary and capricious standard. Firestone, 489 U.S. at 112-113. If an ERISA plan confers authority upon the plan administrator to exercise discretion, the standard of review is whether the actions of the plan administrator were arbitrary and capricious. If there is no discretion, then the standard of review is de novo. DiGiovanni v. Guardian Life Ins. Co. of America, 2002 WL 1477175, D.Mass.,2002, citing Grady v. Paul Revere Life Ins. Co., 10 F.Supp.2d 100, D.R.I.,1998.

Any language conferring discretionary authority must *clearly* confer discretionary authority upon the plan administrator to invoke the arbitrary and capricious clause. Cleary v. Knapp Shoes, Inc., 924 F.Supp. 309, D. Mass. 1996 (emphasis in original). "[I]n order for the more deferential arbitrary and capricious standard to apply ... "discretionary authority" as defined by *Firestone* must be expressly conferred by the plan in question. "A finding of this express authority does not hinge on a policy's use of any magic words such as 'discretion.' The policy must, however, set forth terms sufficient such that it can reasonably be found that such power and discretion has been conferred." Grady v. Paul Revere Life Ins. Co., 10 F.Supp.2d 100, 22 Employee Benefits Cas. 1367. The Grady court cited an example of language that clearly confers discretionary authority upon a plan administrator. The example given was found in a plan conferring upon an administrator discretionary power, and the language of the plan read as follows: The plan administrator was given the right "to interpret and construe the Plan, [and] to determine all questions of eligibility and the status and rights of the Participants", and further "providing that 'all decisions of the administrator shall, to the extent not inconsistent with provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the Plan.' Grady, 10 F.Supp.2d at 110, citing Coleman v. Metropolitan Life Ins. Co., 919 F.Supp. 573, 580 (D.R.I.1996). In arguing that Standard has discretionary authority, Standard and University rely on language found in the insurance certificate which provides that "[w]ritten proof of Total Disability or Disability is required at reasonable intervals to be determined by TIAA. All proof must be satisfactory to TIAA." This language does not clearly demonstrate any discretionary authority on the part of Standard. Rather, this language could be interpreted as something akin to a proof of loss clause, which does not confer discretionary authority upon the plan administrator. Cleary, 924 F.Supp. at 313. Or, the language is merely setting forth provisions "specifying the

7

procedure by which claims are to be processed, and by which the Policy is to be administered" which falls short of granting the plan administrator discretion under the plan. Grady, 10 F.Supp.2d at 110. Without clear language granting discretionary authority upon Standard, this Court must conduct a *de novo* review.

### III. The Evidence is Not Limited to the Administrative Record

University and Standard allege that the Court may not consider anything beyond the administrative record in this matter. In Orndorff v. Paul Revere Life Insurance Co., 404 F.3d 510, 519 (1st Cir. 2005). The Orndorff court did hold that only the administrative record may be considered by the court in its review of the decision of the plan administrator, but the Orndorff court was deciding a case in which the court was deciding the case under the arbitrary and capricious standard, after having found the plan administrator had discretion under the terms of the plan. When reviewing a matter *de novo*, this Court may consider additional, relevant evidence that was not before the plan administrator at the time of its review. McLaughlin v. Reynolds, 886 F.Supp. 902, 906, D.Me.,1995. Allowing Brilmyer to present evidence beyond the administrative record is the better approach, as limiting the review of this Court to the administrative record is "contrary to the concept of conducting an independent, *de novo* review." Jorstad v. Connecticut General Life Insurance Co., 844 F.Supp. 46, 56, D.Mass., 1994. See also Grady, 10 F.Supp.2d at 112. Brilmyer has presented evidence sufficient to demonstrate a genuine issue of material fact, and will both clarify the evidence contained in the administrative record and uncover new evidence through discovery. All such information should be considered by this Court.

### IV. Standard's Decision To Deny Optional Ltd Coverage

Standard and University contend that Standard's decision to deny Brilmyer benefits under the Optional LTD was neither arbitrary nor capricious. Assuming, *arguendo*, that the arbitrary and capricious standard is the proper standard for the Court to apply in reviewing the decision of Standard, Defendant has not presented any facts that support its contention other than mere allegations by an employee of University and an employee of Standard. The fact that Brilmyer's application for the Optional LTD was never denied until Standard and University knew that Brilmyer would qualify for benefits under the plan, and that Brilmyer would be immediately claiming the same, evidences that Standard acted arbitrarily and capriciously, or raises a genuine issue of material fact as to whether the decision of Standard was arbitrary and capricious.

Furthermore, case law suggests that if a plan administrator is laboring under a conflict of interest, then its decisions are subject to heightened judicial review (i.e. stricter than the arbitrary and capricious standard). *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because Standard had knowledge that, if Standard approved Brilmyer's claim, Standard, as the insurer of the Optional LTD, would be required to begin paying enhanced benefits to Brilmyer at the expense of Standard, a potential conflict of interest exists.

### V. Standard May Be Estopped From Denying Optional Ltd Coverage

There is an unresolved issue in the First Circuit concerning whether a claim for equitable estoppel may be brought under ERISA. *Dreznin v. Reliance Standard Life Ins. Co.*, 350 F.Supp.2d 308, 314, D.Mass.,2004, citing *Mauser v. Raytheon Co. Pension Plan for Salaried Employees,* 239 F.3d 51 (1st Cir.2001). While other circuits may have determined the state law in those circuits regarding equitable estoppel is preempted, Courts in this Circuit have

specifically chosen *not* to rule equitable estoppel claims are preempted. In fact, the *Dreznin* court specifically ordered that the plaintiff in that case, who had originally brought only state law claims against the defendant, would be permitted to amend the complaint to state claims under ERISA, which included, by implication, a state law equitable estoppel claim. The elements of an estoppel claim are that a misrepresentation of fact was made, and the person to whom the misrepresentation was made relied on the misrepresentation to the person's detriment. While Brilmyer did not receive any specific acknowledgment that her application for the Optional LTD was approved, neither did she ever receive any specific information that her application was denied. Brilmyer received other communications mentioning denial of a life insurance policy, which she had applied for at the same time she applied for the Optional LTD. Although there may not have been one central statement from Standard or University that Brilmyer's application was approved that Brilmyer could have relied on, the effect of all the communications taken as a whole constitute a misrepresentation of fact. Brilmyer relied on these statements to her detriment in that she believed her application was approved, and was merely waiting for the change to be reflected in her statements.

### VI. The University is a Party

The University and Standard claim that, because Standard is the claims administrator, and University is merely the plan administrator, that University is not properly a party to this action. Defendants cire <u>DiGregorio v. PricewaterhouseCoopers Long Term Disability Plan, et al</u>, 2004 WL 1774566 (D. Mass. Aug. 9, 2004) in support of this proposition. In that case, a "Long Term Disability Benefit Administration Agreement" had been signed between Hartford Insurance, co-defendant in the matter, and PricewaterhouseCoopers, whereby Hartford Insurance agreed to

"evaluate and process all claims presented by or on behalf of Eligible Employees for payment of benefits according to the terms of the Plan as interpreted by [Hartford]···· We do not insure The Plan. We will not pay any benefits which are not, in our judgement, payable under The Plan." DiGregorio, id. at 3. The matter before this Court is distinguishable from the DiGregorio case, in that there is no evidence before the Court of such an agreement between University and Standard. Furthermore, the Certificate of Insurance defines the plan administrator as the University, and gives the University's address and telephone number as contact information for the Plan. Additionally, the DiGregorio case cites no preceding case law in making the determination upon which the Defendants ask the Court to release the University from this case. Here, while it may be true that Standard processed the paperwork received by Brilmyer, it is not clear what the full role of Standard was as compared to the role of University. There is a genuine issue of material fact on this issue, and therefore is not subject to summary judgment.

## VI. Conclusion

Standard and University have not proven there is no genuine issue of material fact in this case, which would entitle them to summary judgment. Furthermore, Brilmyer has shown that there are several genuine issues of material fact, and therefore summary judgment cannot enter.

                                                    Karen L. Brilmyer,
                                                  By her attorney,

Dated:

                                                  Peter C. Lacy, Esq. (BBO# 647935)
                                                  800 Main Street
                                                  Jefferson, MA 01522
                                                  (508) 829-9997

12

## CERTIFICATE OF SERVICE

TO:

Brooks R. Magratten
Vetter & White
20 Washington Place
Providence, RI 02903

    I hereby certify I caused to be served on the above-named counsel of record a copy of the within memo by first class mail, postage prepaid, on August 12, 2005.

_____