UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN L. BRILMYER<br>              PLAINTIFF<br><br>v.<br><br>UNIVERSITY OF CHICAGO and<br>THE STANDARD INSURANCE COMPANY<br>              DEFENDANTS | CIVIL ACTION<br><br>Docket Number 04-40258 FDS |

**AFFIDAVIT OF KAREN L. BRILMYER**

Karen L. Brilmyer, being duly sworn says:

1. I am the plaintiff in the above captioned matter.

2. I am a former employee of the University of Chicago ("University").

3. I was employed by the University as a full-time regular employee.

4. My employment status entitled me to be enrolled in a long-term disability plan (the "Plan") as part of my benefits package at the University. Exhibit A, p. 4.

5. There are two levels of disability benefits under the Plan, one known as the Base LTD, and the other known as the Optional LTD. Id.

6. I was initially enrolled in the Base LTD.

7. Benefits under the Base LTD are described as follows:

    > If you are disabled, you will receive 60% of your monthly wage base, less the sum of the benefits you receive from other sources, up to a maximum of $10,000 per month. If you die after having been totally disabled for at least six months, your surviving dependents will receive an income. Exhibit A, p. 5.

8. Benefits under the Optional LTD are described as follows:

> The Optional Plan provides four types of benefits over and above those provided by the Base Plan. First, your 60% disability benefit will increase by 5% each year while you are disabled. Second, you may qualify for benefits if you are partially disabled. Third, the Optional Plan employs a more liberal definition of disability. And fourth, the monthly maximum benefit under the Optional Plan is $20,000. Id.

9. The definition of "disability" under the Optional LTD is "own occupation", meaning that disability benefits are based on the recipients ability to perform the duties specific to the position held when the person became disabled. The definition of "disability" under the Base LTD is "any occupation", meaning that disability benefits are based on the recipients ability to perform the duties of any job. Exhibit A, p. 11.

10. I made my application for the Optional LTD for the enhanced benefits.

11. At the time I enrolled in the Plan, the University was the plan administrator of the Plan. Exhibit A, p. 22.

12. At the time I enrolled in the Plan, TIAA was processing applications for benefits made under the Plan. Exhibit A, p. 15.

13. During an open enrollment period, which occurred on or about November, 1999, I filed an application along with an Employee's Statement of Health to change my level of benefits from the Base LTD to the Optional LTD. Exhibit A, p.22.

14. At the same time I applied to change the benefit level under the Plan, I also applied to increase the amount of a term life insurance policy which was purchased by me as another part of the employee welfare benefit plan offered by the University of Chicago to its employees.

15. On or about February 17, 2000 I received a letter from TIAA-CREF with a header reading that the letter was regarding "The University of Chicago *Group Life Insurance* Option 4 Group No. 0052" (emphasis added) temporarily declining "coverage" at that time. Exhibit A, p. 23.

16. I later came to know that the University had also received a letter from TIAA, again mentioning only that my application for group life insurance was temporarily declined, not declining my application for coverage under the Optional LTD. Exhibit A, p. 24.

17. The letter of February 17, 2000 did not include any information on the change of the level of benefits under the Plan. The denial was only temporary, according to the letter of February 17, 2000.

18. On or about April 22, 2000 I fell from a ladder and sustained a closed head injury.

19. I was placed on short-term disability beginning on August 4, 2000.

20. I had also applied for an FMLA Leave of Absence on or about July 21, 2000. Exhibit A, p. 25.

21. My short-term disability benefits were exhausted on October 20, 2000, reflecting a thirteen week annual allotment of short term disability benefits. Exhibit A, p. 9.

22. I was approved for benefits under the Base LTD on or about November 27, 2000. Exhibit A, p. 26.

23. I never received any notice that my application for enrollment in the Optional LTD was denied.

24. I contacted TIAA on or about January 22, 2003 asking TIAA to place me on the Optional LTD, as I had applied for, and to my knowledge under which I was covered. Exhibit A, p. 30.

25. I received a letter dated January 28, 2003 from TIAA stating that my benefits under the Optional LTD were not denied. Exhibit A, p. 31.

26. My understanding from the letter of January 28, 2003 was that my not receiving benefits under the Optional LTD was an error, not a declination of coverage.

27. From the letter of January 28, 2003, I understood that I needed to send a letter and supporting documents to the Group Administration area of TIAA to appeal the decision of TIAA that my application was not received.

28. On or about February 21, 2003, I attempted to contact the Group Administration area, to send that area supporting documents demonstrating that I had complied with the filing requirements of the application, and that the declination of coverage was an error.

29. On or about March 3, 2003 I received notice that TIAA would no longer be claims administrator for the Plan, but rather that the Standard Insurance Company ("Standard") would now be claims administrator for the Plan, that Standard was now responsible for evaluating claims and making determinations, and that all correspondence regarding the Plan would now be handled by Standard. Exhibit A, p. 32.

30. On March 5, 2003 I received notice from Standard that my file had been referred to Standard's Quality Assurance Unit for review. Exhibit A, p. 33.

31. After review, I received notice on April 25, 2003 from TIAA that coverage under the Optional LTD had been denied on February 17, 2000, although I had not been given any notice of the declination until the date of the letter of April 25, 2003. Exhibit A, p. 34.

32. I was granted a further review of my case. Exhibit A, p. 38.

33. After review, Standard again declined me coverage. Exhibit A, p. 40.

_____
Karen L. Brilmyer

Subscribed and sworn to before me on this _12_ day of _August_, 2005

_____
NOTARY PUBLIC

**Adele Gitterman**
Commission # DD333363
Expires June 28, 2008
Bonded Troy Fain - Insurance, Inc. 800-385-7019

## CERTIFICATE OF SERVICE

TO:

Brooks R. Magratten
Vetter & White
20 Washington Place
Providence, RI 02903

I hereby certify I caused to be served on the above-named counsel of record a copy of the within affidavit by first class mail, postage prepaid, on August 19, 2005.