UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN L. BRILMYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 04-40258-FDS |
| ) | |
| UNIVERSITY OF CHICAGO and THE ) | |
| STANDARD INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a dispute arising from an attempted change of enrollment in a long-term disability plan. The plan at issue was provided to plaintiff Karen L. Brilmyer as a benefit of her employment with defendant University of Chicago. Defendant The Standard Insurance Company is the claims administrator and insurer. The matter arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

**I.    Background**

   **A.    The Parties and the LTD Plan**

Karen L. Brilmyer was employed by the University of Chicago from 1989 until 2000. During that period, the University offered both long-term disability insurance and group term life insurance as benefits of employment. Although the precise features of the long-term disability plan (the "LTD Plan") are not clear, for present purposes it is sufficient to note that it had two

tiers: a "Base LTD" plan and an "Optional LTD" plan.[1] The Optional LTD plan provided more generous benefits, but required the participant to pay a higher premium. Participants could be enrolled only in one or the other tier.

Standard is the successor to Teachers Insurance and Annuity Association ("TIAA"), which was the original insurer of both the LTD Plan and the group life insurance policy and also served as the claims administrator. In October 2002, TIAA assigned its rights and interests to Standard.[2] Defendants do not dispute that, as its successor, Standard is subject to liability for the acts and omissions of TIAA.[3]

---

[1] The parties agree that the University maintained a long-term disability plan that is governed by ERISA. They have not specifically identified, however, which document in the record (if any) is the full, governing plan document. There are two documents in the record that purport to set forth, at least in summary fashion, the features of the plan. The first is a University of Chicago document entitled "Long-Term Disability Plan Summary Plan Description" (the "SPD"), submitted by both plaintiff and defendants. The second is an excerpt of the full contract between the University and TIAA for a TIAA-issued policy of long-term disability insurance that funded the plan, submitted by defendants. The excerpt has two parts: one entitled "Group Long Term Disability Insurance Policy" (the "Policy") and one entitled "Your Group Long Term Disability Insurance Certificate" (the "Insurance Certificate"). Both documents appear to contain the features minimally required of a plan. *See* 29 U.S.C. §§ 1002(1), (3) (defining "plan" and "welfare plan"), 1102 (requisites of plan). Neither, however, purports to constitute the full plan.

Ordinarily, the Court must identify what documents set forth the terms of the plan before it can "determine whether an administrator reasonably interpreted a plan." *Fenton v. John Hancock*, 400 F.3d 83, 88-89 (1st Cir. 2005). Here, no party has contended that the above documents are not plan documents or do not accurately represent the plan itself. *Cf. id.* (dispute between parties regarding which documents set forth the plan resolved before addressing benefit claim). Furthermore, the Insurance Certificate and the SPD are not, on their faces, inconsistent with each other, at least as to matters relevant to this case. *See id.* at 89 (summary plan description that was silent on the issue of the administrator's discretion to interpret the plan did not "create a direct conflict" with the provisions of other plan documents).

For these reasons, the Court will assume that both documents are plan documents that accurately represent the terms of the LTD Plan, and will consider the language of both to resolve this dispute.

[2] Defendants submitted the affidavit of a Standard employee, who attested that TIAA assigned its rights and interests in the LTD Plan to Standard. Although the employee did not attest whether the group life insurance plan was similarly assigned, the Court infers from other documents in the record that it was.

[3] Defendants contend that the University had no involvement in the decision-making and therefore is not a proper party to this suit. Brilmyer points to the University's designation as the "plan administrator" in the SPD, and contends that the University is a proper party. The Court need not decide this issue because of its grant of summary judgment on the merits.

B. **Brilmyer's Application to Increase Her Coverage**

Both the SPD and the Insurance Certificate contain provisions concerning initial enrollment. The Insurance Certificate—but not the SPD—also contains provisions concerning a change in enrollment:

> [A] Change in Plan . . . will be made when you give your Employer a written request for a different Plan than the one for which you are insured. The change in Plan will take effect on: (1) the first day of the month following the date TIAA approves your proof of good health furnished at no cost to TIAA, if you are requesting a change from benefits under the Base Plan to benefits under the Optional Plan; provided you are Actively At Work on the date the change in Plan is to take effect.

Beginning in 1989, Brilmyer was enrolled in the Base LTD plan and covered by the group life insurance plan. During the University's open enrollment period in November 1999, she applied to increase her life insurance coverage and to enroll in the Optional LTD plan. As a part of her application, Brilmyer completed an on-line health questionnaire. Later, and at TIAA's request, she submitted a completed "Employee's Statement of Health" form. In this document she disclosed that she was then taking a prescribed anti-depressant, Zoloft, and that within the last five years she had been treated and released for post-traumatic stress disorder and for an injured neck.

C. **The Insurer's Response**

In response to her application, Brilmyer received a letter from TIAA dated February 17, 2000. The reference line of the letter stated as follows: "The University of Chicago Group Life Insurance Option 4 Group No. 0052."[4] The text of the letter stated, in relevant part, the

---

[4] The letter did not expressly refer to the LTD Plan. The Court notes that other documents in the record refer to "D52" or "D-0052" as policy numbers for both the long-term disability insurance and the life insurance.

following:

> We have completed our initial review of the enrollment material you submitted and are sorry to inform you that, on the basis of the information given on the "Employee's Statement of Health" form, we must temporarily decline coverage at this time.
>
> We will, of course, be happy to reconsider your request for coverage, if you will submit a narrative summary from your physician(s) concerning the medical history and the nature of the treatment of your post traumatic stress disorder, as well as the reasons for taking Zoloft.

The letter concluded with instructions concerning the types of additional information that would be required of her physician(s), including such details as the causes of her conditions and her prognosis. It also invited Brilmyer to contact TIAA if she had any questions.

The letter did not mention the Optional LTD plan, either in the reference line or the text. There is no evidence that TIAA ever notified Brilmyer one way or the other as to whether it approved or declined her application to enroll in the Optional LTD plan. Brilmyer contends that she did not know that her application had been declined, and assumed that she was covered. However, Brilmyer was never charged for, and never paid, any increased premiums for Optional LTD coverage. She never submitted any further medical information.

There is a separate issue as to whether TIAA actually acted on, let alone declined, Brilmyer's request to enroll in the Optional LTD plan. On this subject, the record contains no direct evidence by anyone with personal knowledge. The administrative record contains an e-mail from Susan Loeb, a University employee, to Brilmyer in which Loeb wrote that she spoke with a TIAA account representative, who explained to her that "as a matter of policy only one Statement of Health is used for both life insurance and LTD requests [and that] TIAA denial (or approval) letters apply to both life and LTD requests (even though [Brilmyer's] was silent on LTD

4

benefits)[.]  TIAA does not issue separate denials or approvals if someone is seeking increased benefits for both."  This hearsay statement as to TIAA's policy is the only evidence in the record as to that subject.

### D. Brilmyer's Injury and Her Subsequent Inquiry

On April 22, 2000, Brilmyer fell from a ladder onto a sidewalk and injured her head.  She has not since returned to work.[5]  She began receiving short-term disability benefits on August 4, 2000.  In September 2000, she applied to the plan for long-term disability benefits.  Beginning in November 2000, she began receiving payments under the Base LTD plan.

In late 2002—after receiving Base LTD plan payments for nearly two years—Brilmyer contacted TIAA to inquire as to the status of her request to enroll in the Optional LTD plan.  Through correspondence with TIAA and the University, she learned that Standard had succeeded TIAA as insurer of the plan and that she should deal with Standard regarding her request.  Standard concluded that TIAA had denied her request for a change in LTD enrollment.[6]  Brilmyer then requested that Standard review TIAA's decision.

### E. The Insurer's Further Review

In response, Standard undertook what is described as "an independent review, conducted separately from the individuals who made the original decision."  By letter dated April 25, 2003, Standard advised Brilmyer that TIAA had declined her request to become enrolled in the Optional

---

[5] Brilmyer stated that she did not provide the additional medical information requested by the February 17, 2000 letter because her accident prevented her from doing so.

[6] There is evidence suggesting that, despite never receiving formal notification, Brilmyer assumed that TIAA had not approved her request for a change in LTD enrollment.  For example, she stated in an e-mail exchange with Loeb in the fall of 2002 that she knew that her premiums did not change, and that she had "no record of [her request] being approved, disapproved or anything."

LTD plan; that Standard had reviewed her medical information and had decided to uphold that decision as appropriate; and that TIAA's letter of February 17, 2000, was intended to apply to both the life insurance request and the request to enroll in the Optional LTD plan.

In January 2004, after further communication with Brilmyer, Standard granted an additional review of her request to become enrolled in the Optional LTD plan and to increase her group life insurance coverage. It referred her request to its Medical Underwriting Department, which considered, retroactively, the initial underwriting decision to decline the additional coverages. As a part of its inquiry, the underwriter obtained and considered additional medical records from the period January 1993 through December 1999.

By letter dated August 19, 2004, Standard informed Brilmyer that it was denying her request on the grounds that her medical conditions from January 1993 to December 31, 1999 would not have permitted an increase in her coverages. Those medical conditions included fibrocystic breast disease, on-going depression, occasional tremors of unknown etiology, and disc herniation at C5/6 with neck and shoulder pain and tingling. According to Cathy Bean, a Senior Medical Underwriter for Standard, that conclusion is consistent with medical underwriting guidelines in the industry.[7]

### F. The Present Lawsuit

Brilmyer filed the present suit on December 14, 2004, asserting a single count under ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming the right to Optional LTD benefits. The parties do not dispute that Brilmyer continues to meet the definition of "disability" under the LTD Plan

---

[7] Bean's opinion is contained in the administrative record in the form of an e-mail to a Standard Disability Benefits Analyst.

(under either tier) and that she continues to receive payments pursuant to the Base LTD plan.

## II. Analysis

The ERISA statute, 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In her attempt to establish her claim for benefits, Brilmyer focuses primarily on what she perceives to have been an unfair process in the consideration of her application to enroll in the Optional LTD plan. She also argues, at least implicitly, that she was *entitled* under the terms of the LTD Plan to enroll in the Optional LTD plan. Because the Court discerns nothing in the process followed by TIAA or Standard in the consideration of her application, or in the language of the LTD Plan, that entitles her to enrollment in the Optional LTD plan (and thus to receive its more generous benefits), summary judgment will be granted to both defendants.

Before turning to the merits, there are three threshold issues to be determined: whether the evidence should be limited to the administrative record; whether the facts must be viewed in the light most favorable to Brilmyer, the non-moving party; and whether the decision should be reviewed *de novo* or under an "arbitrary and capricious standard."

### A. Scope of Evidence to Be Considered

The Court must first determine the scope of the evidence it may consider. Ordinarily, review is limited to the record before the administrative decision-maker. Brilmyer contends, however, that the Court should consider evidence outside of that record.

Supplementation of the administrative record is generally disallowed: "[i]t would offend interests in finality and exhaustion of administrative procedures required by ERISA to shift the

focus from [the final administrative decision] to a moving target by presenting extra-administrative record evidence going to the substance of the decision." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005); *see generally* PAUL J. SCHNEIDER & BARBARA W. FREEDMAN, ERISA: A COMPREHENSIVE GUIDE § 8.03[F] (2d ed. 2003) (exhaustion requirement promotes administrative consistency and benefits judicial economy by providing the court with a fully developed record).[8] The First Circuit has acknowledged, however, that supplementation may be appropriate where certain types of claims are raised that, by "their nature or timing[,] take a reviewing court to materials outside the administrative record." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003). Even then, "some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Id.* For example, supplementation may be appropriate where the plaintiff claims that the administrator had an improper motive rising to the level of a conflict of interest. *See Denmark v. Liberty Life Assurance Co. of Boston*, 2005 WL 3008684, at *9 (D. Mass. Nov. 10, 2005).

Brilmyer contends that the administrator here acted under a conflict of interest in deciding her eligibility for the Optional LTD plan. She has not, however, offered any evidence in her opposition to summary judgment that was outside of the record and relevant to the alleged conflict.[9] And although she argues in her brief that additional evidence will "clarify the evidence

---

[8] Plaintiffs are generally required first to exhaust the internal claims procedures under the plan before seeking judicial review of the administrator's decision. *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 62-63 (1st Cir. 2005).

[9] Defendants argue that the only outside evidence set forth in Brilmyer's L.R. 56.1 statement concerns her alleged belief that TIAA did not deny her application for Optional LTD coverage and that she assumed she was covered. However, evidence of this belief *is* contained in the administrative record (Brilmyer's letter of January 22, 2003: "As far as I was concerned then . . . I applied for optional LTD benefits and never received notice that my

contained in the administrative record," she does not identify, even in the broadest terms, the sort of evidence that she seeks to introduce, how that evidence may clarify the record, or how it may affect in the slightest the analysis of the legal issues.

Furthermore, her bare statement that she will "uncover new evidence through discovery" is not enough to establish a right to such discovery. *See Orndorf*, 404 F.3d at 520 (denial of request for discovery in ERISA case appropriate where plaintiff failed to show "pertinence of her request"); *Liston*, 330 F.3d at 26 (denial of request for discovery in ERISA case appropriate where plaintiff's request invited "an open-ended and probably hopeless attempt" to develop relevant evidence; it is standard that the party requesting discovery must first show that the information to be discovered would be helpful before obtaining the very information that might prove just that).[10]

Accordingly, the Court will decide the matter on record, without supplementation and without discovery.

### B. Summary Judgment Standard

Brilmyer argues that, in accordance with summary judgment cases generally, the Court must view the facts "in the light most favorable to the non-moving party, drawing all reasonable

---

application had been declined. Thus, in April 2000, when I suffered a serious and debilitating injury, I assumed that I was covered by the LTD optional plan that I had applied for four months earlier.").

[10] Even if the Court were to construe Brilmyer's expectation of future discovery as a motion under Fed. R. Civ. P. 56(f) to delay the ruling on summary judgment until discovery may be had, her request fails to identify with any specificity the discovery she seeks, and therefore falls far short of the showing required. *See, e.g.*, *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d 41, 44 (1st Cir. 1998) (under 56(f), party must, among other things, "set forth a plausible basis for believing that specified facts . . . probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") (internal quotation marks removed). Further, plaintiff herself initially agreed on a litigation scheduling order that did not provide for any period of discovery. This schedule, proposed by the parties jointly, was adopted by the Court. At no time did plaintiff attempt to take discovery or move the Court for relief from the order to do so.

inferences in that party's favor."  The First Circuit, however, recently clarified the summary judgment standard in ERISA benefit-denial cases: "in an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." *Orndorf*, 404 F.3d at 517.  "This means the non-moving party is not entitled to the usual inferences in its favor." *Id.*; *accord Liston*, 330 F.3d at 24 ("[O]n the contrary, the rationality standard tends to resolve doubts in favor of the administrator.").  When there is no dispute over plan interpretation, this standard is appropriate regardless of whether the court's review of the plan administrator's decision is plenary or deferential.  *Orndorf*, 404 F.3d at 517.

Here, the ultimate conclusion to be drawn is whether Brilmyer was entitled to be enrolled in the Optional LTD plan as a result of her 1999 application.  Although the Court's ultimate conclusion concerns eligibility, and not disability, the distinction is without a difference in this context.  The review is limited to the administrative record, and the parties do not advance different interpretations of the plan language relevant to the administrator's decision.  Therefore, the *Orndorf* standard is applicable:  Brilmyer is not entitled to any inferences drawn in her favor as the non-moving party, and summary judgment is merely the vehicle by which the Court will decide the ultimate issue.

### C. Scope of Review of Administrator's Eligibility Decision

Judicial review of a plan administrator's denial of benefits is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If such discretionary authority is supplied, an administrator's determination is

reversed only if "arbitrary, capricious, or an abuse of discretion." *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 27 (1st Cir. 2005) (quoting *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 212-13 (1st Cir. 2004)).

The inquiry here focuses on Brilmyer's eligibility for enrollment in the Optional LTD plan under the language of the plan. As noted, the Insurance Certificate states clearly that a change in enrollment is not effective until "TIAA approves your proof of good health." This language is sufficient to confer discretion in the administrative decision-maker to determine eligibility for benefits and to construe the terms of the plan. *Compare, e.g., Brigham v. Sun Life of Canada*, 317 F.3d 72, 81-82 (1st Cir. 2003) (dicta) (proof "satisfactory to us as we may reasonably require" clearly indicative of subjective discretionary authority of insurer), *DePardo v. MFS/Sun Life Fin. Distrib., Inc.*, 2005 WL 1225977, at *4 (D. Mass. May 20, 2005) (proof of claim "must be satisfactory to [insurer]" clearly indicative of subjective discretionary authority of insurer), *and Metropolitan Life Ins. Co. v. Socia*, 16 F. Supp. 2d 66, 69 (D. Mass. 1998) ("all proof must be satisfactory to [insurer]" clearly indicative of subjective discretionary authority of insurer), *with Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005) ("proof of continuing disability, satisfactory to [insurer]" not sufficient to permit the employee to distinguish between plans that are subject to *de novo* review and plans that are not; declines to follow *Brigham*). *Cf. DiGregorio v. PricewaterhouseCoopers Long Term Disability Plan,* 2004 WL 1774566, at *11-*12 (D. Mass. Aug. 9, 2004) (discretion not vested in administrator where plan provided that "upon receipt of due proof . . . of bodily injury or sickness . . ." benefits will be paid); *Rivera v. Cornell U.*, 297 F. Supp. 2d 412, 414-15 (D.P.R. 2003) (discretion not vested in insurer where plan provided that benefits will be paid when "[insurer] receives due proof").

Accordingly, the administrator's decision here will be reversed only if it is arbitrary, capricious, or an abuse of discretion. In other words, the decision will be upheld if it is "reasoned and supported by substantial evidence." *Buffonge*, 426 F.3d at 27.

### D. Review of Administrator's Eligibility Decision

#### 1. Language of the Plan

In a claim for benefits, "the central issue must always be what the plan promised to [plaintiff] and whether the plan delivered." *Liston*, 330 F.3d at 25.[11] As described above, the plan provided that her request for a change in enrollment would not be effective until "TIAA approves your proof of good health." None of the parties offer a more tailored understanding of the phrase "good health." The language does not establish a presumption of the good health of the applicant; rather, the burden of proving one's good health rests squarely with the applicant. *Cf. Mooney v. Continental Assurance Co.*, 2005 WL 1715746 (N.D.N.Y. July 21, 2005) (under supplemental life insurance plan, enrollment not complete until employee submitted "proof of good health"; despite applying and paying increased premiums, employee's application was not timely and did not include such proof, and therefore she was not covered under terms of the plan); *Kleffman v. Reliance Standard Life Ins. Co.*, 2005 WL 1383964 (W.D. Wash. June 8, 2005) (similar).

Defendants cite to evidence that a Standard underwriter opined that the denial of Brilmyer's application would be "consistent with medical underwriting practices in the industry"

---

[11] "The ERISA statute directs the district court to confine its analysis to the terms of the plan. ERISA authorizes a participant to bring an action 'to recover benefits due to him *under the terms of the plan,* to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*.'" *Fenton*, 400 F.3d at 87 (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis in original).

and that her conditions fell "within our group underwriting criteria for standard issue for LTD." Whatever the boundaries of the term "good health"—and admittedly, the phrase is not precise—Standard's decision to deny her application for Optional LTD enrollment cannot be said to be without a reasoned basis. Standard's final declination letter concluded that Brilmyer's documented medical conditions from January 1993 to December 31, 1999, would not have permitted increases in LTD coverage.[12] These medical conditions included fibrocystic breast disease, on-going depression, occasional tremors of unknown etiology and disc herniation at C5/6 with neck and should pain and tingling. Even under a *de novo* review, the phrase is not so malleable as to establish Brilmyer's entitlement to enrollment. There is substantial evidence of significant medical problems, ranging from the minor and sporadic to the significant and persistent. In the face of such record evidence, and Brilmyer's failure to develop *any* record evidence to affirmatively establish her good health, she cannot meet her burden to establish eligibility for the change in enrollment she requested under the terms of the plan. *Cf. Drinkwater v. Metro Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988) ("A blanket assertion, unsupported by any facts, is insufficient.").

### 2. **Procedural Defect**

The thrust of Brilmyer's case is a perceived procedural failing by TIAA and Standard that Brilmyer contends resulted in a conflict of interest. It is true that, if a benefit plan grants

---

[12] Brilmyer contends that she never received notice that TIAA declined her request to increase her LTD coverage. As described above, defendants do not dispute this, but point to evidence that TIAA's policy was to send just one letter applicable to two applications for changes. Even assuming that TIAA never took any action on her request for a change in LTD plan, it does not change her eligibility under *the terms of the plan*. *Cf. Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*, 404 F.3d 167, 171 (2d Cir. 2005) (plaintiff never enrolled in plan, which was a requirement for receiving benefits under the plan; employer's violation of ERISA summary plan description requirement did not entitle him to benefits). The relevance of this to her contention that the decision-maker acted under a conflict of interest is discussed below.

discretion in a party operating under a potential conflict of interest, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (internal quotation marks and citation removed). An improper motivation amounting to a conflict of interest empowers the court to "cede a diminished degree of deference—or no deference at all—to the administrator's determinations." *Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67, 74 (1st Cir. 2005) (internal citation removed). The First Circuit has termed this as adding "bite" to the standard of review. *Fenton*, 400 F.3d at 90. The burden is on plaintiff to establish a conflict. *Wright*, 402 F.3d at 74 n.4. The conflict must not be "chimerical, imagined, or conjectural," but must be real. *Id*. at 74 (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir. 2002)). The potential of an insurer to deny claims to maximize profit by virtue of its dual status as both administrator and payor of benefits does not by itself suffice. *Id*. at 75; *accord Denmark*, 2005 WL 3008684, at *10.

Specifically, Brilmyer argues that the "fact that [her] application for the Optional LTD was never denied until Standard and University knew that Brilmyer would qualify for benefits under the plan, and that Brilmyer would be immediately claiming the same" evidences a conflict of interest.[13] Even finding that TIAA never acted, one way or the other, on her claim for Optional

---

[13] Brilmyer also argues that this fact shows that Standard acted arbitrarily and capriciously and that defendants should be estopped from denying her benefits. It is true that an administrator's "obligation to avoid arbitrary and capricious behavior extends to procedure as well as substance." *Liston*, 330 F.3d at 25 n.5. For example, in *Liston*, the plaintiff claimed that other similarly situated executives received certain benefits under a severance plan that she was denied. The court acknowledged that, even though she did not bring a discrimination case, it might be relevant to her claim for benefits under the plan that others similarly situated were regularly given benefits that she was denied; this could "represent an administrative construction bearing on the meaning of the plan and undermine the reasonableness of a contrary and disparate reading in a given case." *Id.,* at 25. Brilmyer has not identified how the fact that her application for enrollment in the Optional LTD plan was originally denied post-accident compels a finding that there was an arbitrary or capricious denial of her enrollment under the terms of the plan.

As to her estoppel claim, defendants argue that common-law estoppel claims have been preempted by

LTD, Standard ultimately did. It reviewed her request both in April 2003, and in spring 2004. Even assuming that those involved in this review had knowledge that Brilmyer was already disabled, this fact does nothing other than to establish that TIAA, and then Standard, had the potential to maximize its profits by denying her enrollment in the more generous LTD tier. This alone does not establish a conflict of interest. Even if it did, and even if the Court chose not to accord any degree of deference to Standard's decision, the fact remains that even under a *de novo* standard of review, Brilmyer has not articulated any reason for the Court to conclude that, under the terms of the plan, she had proved that she was in "good health" and therefore eligible for enrollment in Optional LTD.[14]

### III.    Conclusion

For the foregoing reasons, defendants are entitled to summary judgment in their favor as a matter of law. Defendants' Motion for Summary Judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 5, 2006

---

ERISA. The Court need not decide whether preemption applies because, even on the merits, plaintiff has failed to set forth sufficient evidence to satisfy the elements of a claim for estoppel. *See, e.g., Mauser v. Raytheon Co. Pension Plan For Salaried Employees*, 239 F.3d 51, 57 (1st Cir. 2001) (plaintiff must show (1) that defendant made "definite misrepresentations of fact" to her with reason to believe that she would rely on such misrepresentations; and (2) that plaintiff relied reasonably on the misrepresentations to her detriment).

[14] The Court need not address defendants' alternative argument that plaintiff's jury claim should be struck. *See Liston*, 330 F.3d at 24 n.4 (when review of an administrator's decision is limited to the administrative record, jury trial is not likely available). Likewise, the issue of whether the University is a proper party is moot.